UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 4:06-cv-0041-DFH-WGH |
| | ) | |
| | ) | |
| DENNIS L. COCHRAN, SANDRA G. | ) | |
| COCHRAN, and GMAC MORTGAGE | ) | |
| GROUP, | ) | |
| | ) | |
| Defendants. | ) | |


ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT


The United States of America has sued defendants Sandra and Dennis
Cochran to collect federal income tax for the years 1994, 1995, and 1996. During
those years, the Cochrans operated a restaurant but did not file federal income
tax returns. The Commissioner of Internal Revenue assessed taxes in 1998 for
unreported income stemming from the restaurant's operation. The government
now seeks taxes, penalties, and interest from the Cochrans. The GMAC Mortgage
Corporation may claim an interest in the real property involved in this action and
was made a party pursuant to 26 U.S.C. § 7403(b). The court has jurisdiction
under 26 U.S.C. § 7402.

Both sides have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The small record in this case is largely undisputed, but there are two material factual disagreements about whether proper notice was given to the Cochrans and about the size of the tax deficiency. Accordingly, both motions for summary judgment are denied.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving party entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party must show that there is no genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not positively disprove the opponent's case; rather, it may prevail by establishing the lack of evidentiary support for that case. See *id.* at 325. Where the non-moving party bears the burden of proof on an issue at trial and the motion challenges that issue, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2); see also *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). Bare allegations not supported by specific facts are not sufficient in opposing a motion for summary judgment. *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004),

quoting *Hildebrandt v. Illinois Dep't. of Natural Resources*, 347 F.3d 1014, 1036 (7th Cir. 2003).

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable trier of fact might rule in favor of the non-moving party based on the evidence in the record. *Anderson*, 477 U.S. at 251-52.

The fact that both sides have filed motions for summary judgment does not alter the applicable standard; the court must consider each motion independently and will deny both motions if there is a genuine issue of material fact. See, *e.g.*, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Harms v. Laboratory Corp. of America*, 155 F. Supp. 2d 891, 905-06 (N.D. Ill. 2001). In considering cross-motions for summary judgment, the court must consider the evidence through two lenses. When considering the Cochrans' motion for summary judgment, the court must give the government the benefit of all conflicts in the evidence and the benefit of all reasonable inferences that might be drawn from the evidence in its favor, even if the evidence or the inferences seem

improbable.  When considering the government's motion for summary judgment, the roles are reversed.

*Undisputed Facts*

Sandra and Dennis Cochran owned and operated the Dillsboro Family Restaurant during the period of 1993 through 1996.  Def. Resp. to Pl. Interrog. No. 11.  For 1993, the Cochrans filed a federal income tax return.  Their total tax liability for that year was approximately $1,800.  Def. Ex. E 3.  The Cochrans did not file tax returns for 1994, 1995, and 1996, and they have produced no financial records for those years.

In 1998, the Internal Revenue Service made assessments against the Cochrans for unpaid income tax for 1994, 1995, and 1996.  The IRS based its assessments for those years on income reported for 1993.  Def. Ex. A 12; Def. Ex. B 11.  With penalties and interest, the IRS claims that the Cochrans now owe approximately $185,000.  Pl. Ex. A 3, 5.  The Cochrans claim that they made no profit at their restaurant in 1994-96 and therefore owe nothing.  Def. Resp. to Pl. Interrog. Nos. 7, 8.  Additional facts are noted below as needed.

*Discussion*

The Cochrans argue (1) that the collection suit cannot proceed because the IRS did not send them a notice and demand letter, (2) that the suit should be dismissed because they have no financial resources to pay a judgment, and (3) that the assessment against them is arbitrary and excessive.  The IRS asserts:  (1) that it sent the Cochrans the notice and demand, (2) that the defense of poverty is meritless, and (3) that its tax assessment is presumed valid.

I.      *Notice and Demand*

Within sixty days of making an assessment of a tax, the IRS must "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof."  26 U.S.C. § 6303.  In general, the taxpayer has ninety days to file a petition with the Tax Court to challenge the deficiency assessment.  26 U.S.C. § 6213.  No court proceeding for collection shall be made, begun, or prosecuted until notice has been mailed and the ninety day period has expired.  26 U.S.C. § 6213.

Yvette Stiger of the IRS testified in her affidavit:  "Notice of each of the assessments . . . and demand for its payment, was sent to [the Cochrans] on or about the date of the assessment."  Pl. Ex. A, ¶¶ 4, 7.  There is no separate documentary support for this claim.  The Cochrans testified that they reviewed the IRS records about them and found no indication that the IRS mailed a Notice and

Demand to him or his wife.  D. Cochran Aff. ¶ 14; S. Cochran Aff. ¶ 14.  The Cochrans both declare that they "did not receive any Notice and Demand for Payment as required by law from the IRS for the years 1994, 1995, 1996."  D. Cochran Aff. ¶ 14; S. Cochran Aff. ¶ 14. No other evidence bears on this question, and the government did not respond to this evidence and argument by the Cochrans.

The statute does not require the Cochrans to admit that they received a Notice and Demand letter.  See 26 U.S.C. § 6213.  In the absence of a response from the government, however, the court finds that the government's motion for summary judgment must be denied.  This issue will be available for further briefing and evidence at trial.

II.    *Ability to Collect a Judgment*

The Cochrans contend that they are entitled to summary judgment because they have no assets with which to pay a tax judgment against them.  The Cochrans have submitted evidence to show their current inability to pay a judgment.  Def. Ex. H, I, J, K.  They underscore that their real property was recently valued at $39,200, Def. Ex. I, and that they have a mortgage on the property with a principal balance of more than $50,000, Def. Ex. J.[1]  The Cochrans state that the mortgagee's interest in their property has priority over a

---

[1]The IRS conducted its own appraisal of the Cochrans' property in May or June 2007 but did not submit that evidence with its motion.  Def. Br. 11.

tax lien via 26 U.S.C. § 6323(a).  The Cochrans have not come forward with any authority, however, and the court is aware of none, holding that the IRS must prove that it can collect a judgment before it wins a judgment.  The Cochrans are not entitled to judgment as a matter of law on this theory.

III.    *The Amount of the Tax Deficiency*

The Cochrans argue that the tax assessments for 1994, 1995, and 1996 should not be given the normal presumption of correctness accorded to IRS tax assessments.  They claim that the assessment is arbitrary and excessive, and that the IRS has not supplied the evidence needed to support a judgment in its favor.  The evidence also indicates a fundamental disagreement between the parties about the existence and size of the Cochrans' tax liability for the years 1994 to 1996.

Tax deficiency assessments determined by the Commissioner of Internal Revenue carry a presumption of correctness, and this presumption imposes upon the taxpayer the burden of proving that the assessment is erroneous.  See, *e.g.*, *United States v. Janis*, 428 U.S. 433, 440 (1976) (stating that the policy behind the presumption of correctness applies the same way in civil collection suits that it does in taxpayer-initiated refund suits and pre-assessment Tax Court proceedings); *Kikalos v. Commissioner*, 434 F.3d 977, 982 (7th Cir. 2006), citing Tax Court Rule 142(a).  "Justification for the presumption of correctness lies in

the government's strong need to accomplish swift collection of revenues and in the need to encourage taxpayer recordkeeping." *Portillo v. Commissioner*, 932 F.2d 1128, 1133 (5th Cir. 1991).  The presumption attaches virtually regardless of the information, procedures, or policies used because the presumption "recognizes the structural inequality of information in the possession of the Commissioner relative to the taxpayer." *Zuhone* v. *Commissioner*, 883 F.2d 1317, 1325-26 (7th Cir. 1989).

In some situations, however, the taxpayer may rebut the presumption and shift the burden back to the IRS by showing that the Commissioner's deficiency assessment is both "without rational foundation and excessive" (and thus a "naked assessment").  *Janis*, 428 U.S. at 441; see also *Kikalos*, 434 F.3d at 985 ("the taxpayers must demonstrate that the Commissioner's deficiency assessment lacks a rational foundation or is arbitrary and excessive").  The necessary showing is arbitrary *and* excessive, not just excessive.  *Pittman v. Commissioner*, 100 F.3d 1308, 1317 (7th Cir. 1996).

The government's burden is not high; all that is required is that the Commissioner's determination have some minimal factual predicate.  *Kikalos*, 434 F.3d at 985, quoting *Pittman*, 100 F.3d at 1317; *United States v. Smith*, 950 F. Supp. 1394, 1399 (N.D. Ind. 1996).   The presumption of correctness is appropriate where the IRS produces evidence to link the taxpayer with the tax-generating activity.  *Gold Emporium, Inc. v. Commissioner*, 910 F.2d 1374, 1378

(7th Cir. 1990), quoting *Anastasato v. Commissioner*, 794 F.2d 884, 887 (3d Cir. 1986).

At its core, the arbitrary and excessive exception recognizes that when the IRS has based its assessment on presumed receipt of unreported income, the taxpayer is in the difficult position of proving that she did not receive the attributed income. *Smith*, 950 F. Supp. at 1399, quoting *Anastasato*, 794 F.2d at 887; cf. *Zuhone*, 883 F.2d at 1326 (noting that, once an assessment has been found arbitrary, some courts have imposed a lesser burden of proof on a taxpayer who must prove a negative proposition, such as the non-existence of alleged unreported income).  The exception serves a valuable protective purpose where the taxpayer could not reasonably be expected to produce financial records.  "Even the most innocent of persons would have difficulty in disproving such a serious charge as selling heroin, when the party making the charge was not required to present any evidence." *Weimerskirch v. Commissioner*, 596 F.2d 358, 361 (9th Cir. 1979) (finding a naked assessment in view of the total absence of any substantive evidence).

The situation is very different where the tax is assessed on the basis of known income-generating activity for which the taxpayer has simply failed to keep adequate records.  In *Gold Emporium*, the taxpayer claimed that he made business notations on scrap paper and discarded them when payments from customers were received.  *Gold Emporium*, 910 F.2d at 1376.  The Seventh Circuit affirmed

the judgment of the Tax Court, finding that the presumption of correctness applied, "especially here where the taxpayer failed to produce or maintain adequate records from which actual income could be ascertained." *Id.* at 1379.

Similarly in *Zuhone*, the IRS based its deficiency estimate for 1975-1976 mineral interests on reports from 1978.  The Seventh Circuit affirmed the Tax Court's approval of the IRS estimate:

> The accuracy of the Commissioner's method, of course, is irrelevant if the value ascertained by using the 1978 reserve reports is higher than would have resulted using solely that information available in the two taxable years in question. But [the] taxpayer has not presented a single piece of concurrent evidence, such as reserve reports from the taxable years in question, offers to purchase taxpayer's mineral interests, purchase prices of comparable mineral interests during the taxable years, or electric log analyses, to indicate that the value would be lower if the 1978 reserve reports were not used.

*Zuhone*, 883 F.2d at 1327.  When the taxpayer fails to produce or maintain adequate records from which actual income may be ascertained, the Commissioner may use any reasonable method of calculation.  *Id.* at 1326, quoting *Goodmon v. Commissioner*, 761 F.2d 1522, 1524 (11th Cir. 1985).

In the Cochrans' case, the IRS based its 1994-96 deficiency assessment on the Cochrans' 1993 tax return.  The Cochrans contend that the gross receipts assigned for the years 1994, 1995, and 1996 have no logical connection to the gross receipts of 1993 and that the assessment is therefore arbitrary.  Def. Reply Br. 7.  The Cochrans both assert that their restaurant became unprofitable after

1993, forcing them eventually to sell it.  Def. Resp. to Pl. Interrog. Nos. 7, 8.  They provide no financial records or even detailed recollections, noting that "it would be difficult, if not impossible, for the Defendants to have an accurate memory of events that occurred more than ten years ago."  *Id.,* No.  5.

Ultimately the Cochrans misconstrue the amount of evidence needed to support the presumption of correctness.  The presumption is appropriate here because the IRS has linked the Cochrans to the alleged income-generating activity.  *Gold Emporium*, 910 F.2d at 1378.  The 1993 tax return suffices to create a minimal factual predicate for the deficiency assessment.  See *Kikalos*, 434 F.3d at 985.  The 1993 return indicates that the Cochrans were liable for tax in that year arising from sales in the restaurant they owned.  The Cochrans' responses to interrogatories admit that they continued to operate the same restaurant in 1994, 1995, and 1996.  The argument that the tax is excessive in relation to the 1993 income, even if true, does not make this assessment a naked assessment.  The assessment loses its presumption of correctness only if it is both excessive *and* arbitrary.  *Pittman*, 100 F.3d at 1317; see also *United States v. Schroeder*, 900 F.2d 1144, 1149 (7th Cir. 1990) (reversing district court's use of naked assessment doctrine where assessment was admitted by the IRS to have been approximately five percent too high).

The IRS is entitled to use indirect methods of assessment where the taxpayer has failed to keep adequate records.  *Zuhone*, 883 F.2d at 1326.  It was

the Cochrans, not the IRS, who ran the Dillsboro Family Restaurant.   The presumption of correctness exists in part because our tax system is based on self-reporting, so that the IRS has relatively little information about a taxpayer's finances.  *Id.* at 1325-26.  The Cochrans cannot fault the government's use of old tax records when they failed to submit any substantive evidence themselves. Accordingly the presumption's policy goal of encouraging taxpayer recordkeeping is in full force here.  See *Portillo*, 932 F.2d at 1133.

The Cochrans cannot show that the IRS assessment was arbitrary or without a rational foundation.  Because the parties have stipulated to the facts relevant to this issue, the use of the naked assessment doctrine is therefore barred here as a matter of law.

Nevertheless, that does not mean that the government is entitled to every penny it seeks here.  The court has attempted to decipher the more precise grounds for the government's calculations and concludes that the precise amount of the Cochrans' liability is a disputed material fact that should be resolved in a trial.  For each of the three years in question, the government's assessment assumes a total tax liability (before interest and penalties) more than ten times the amount reported by the Cochrans as their tax liability for 1993.  Accordingly, both sides' motions for summary judgment are hereby denied.  The court trial remains set for November 3, 2008 in New Albany, with a final pretrial conference on October 23, 2008 in Indianapolis.

So ordered.

Date: July 11, 2008

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Nathan A. Baker
BARNES & THORNBURG
nbaker@btlaw.com

Pamela  Grewal
UNITED STATES DEPARTMENT OF JUSTICE
pamela.grewal@usdoj.gov

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov

Charles Edward McFarland
mcfarlandc@bellsouth.net